JOHN F. MARQUETTE and Wife v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 12 October, 1910.)

Telegraphs—Office Hours—Attempted Delivery—Evidence—Nonsuit.

In an action for damages against defendant for delayed transmission and delivery of a message, it appeared from plaintiff's evidence that the telegram was filed at a substation of another

company in Baltimore at 8 P. M., Saturday, and upon the face of the original message, introduced by plaintiff, that it was not transmitted from main office in Baltimore until 10:15 P. M. It further appeared that the message was delivered to this defendant at Raleigh for transmission to Kinston, N. C., and was delivered to sendee at 9:15 next morning. It further appeared that in the regulation fixing the office hours of the Kinston office it was closed from 9 P. M. Saturday to 9 A. M. Sunday. *Held*, no evidence of negligence upon part of defendant. Evidence that at 9:30 P. M. Saturday defendant's messenger had attempted to deliver a message in defendant's envelope addressed to plaintiff to one of a similar name, who did not open it, and informed the messenger where plaintiff was to be found, and that the message sued on was unusually dry the next morning, when delivered, for a message just received, is too conjectural to identify the message attempted to be delivered Saturday night as the one sued on.

APPEAL from *Cooke, J.,* at the March Term, 1910, of LENOIR.

Civil action brought by the *feme* plaintiff against the Western Union Telegraph Company and the Postal Telegraph Company for damages caused by alleged negligence in the transmission and delivery of the following telegram, set out in the complaint and the original of which was introduced in evidence by the plaintiff, viz:

POSTAL TELEGRAPH COMMERCIAL CABLES.
TELEGRAM.

Time filed,          Check,
10:15 P. M.          BALTIMORE, Md., March 13th, '09.
48 W. MF FR—4 Paid.          RUSH.

Mrs. John F. Marquette,
        Kinston, N. C.

Coming on first train.                    John.     11P.

This telegram was delivered to the sendee 9:15 A. M. on Sunday, 14 March, 1909. It appears in the record that the controversy was settled as to the postal company upon payment by that company of all "costs and disbursements in this action."

The issues relating to the Western Union are as follows:

1. Did the defendant, the Western Union Telegraph Company, negligently fail to deliver the message complained of to the plaintiff? Answer, Yes.

2. What damage, if any, has the plaintiff sustained on account of mental anguish caused by such negligence? Answer, Six hundred and fifty dollars ($650). The court reduced the damages by consent of plaintiff to three hundred dollars and rendered judgment against the Western Union Telegraph Company. Defendant excepted and appealed. There was a motion in apt time by appellant to nonsuit, which was renewed at close of all the evidence. It was denied, and defendant excepted.

*G. V. Cowper, W. D. Pollock* for plaintiff.
*John D. Bellamy* for defendant.

BROWN, J.   In the clear and exhaustive charge of his Honor, the liability of the defendant, the Western Union Telegraph Company, for the damages claimed is made to depend upon one theory only, and that is that this defendant received the telegram at its Kinston office on the night of 13 March, in time for delivery that night and failed to deliver it until following morning.

The learned judge charged as follows: "If the jury shall find by the greater weight of the evdence that the Western Union agent at Kinston received that message on the night of the 13th and negligently failed to deliver the same until the next morning, and the jury shall find by the greater weight of the evidence that the said agent at Kinston had notice of the cause of the telegram, then the jury should allow such damages as they shall be satisfied by the greater weight of the evidence would be reasonable compensation for the mental anguish which the *feme* plaintiff suffered."

The defendant contends that there is no sufficient evidence that the message was received at its Kinston office on the night, of 13 March, but that all the evidence shows that it was not and could not have been received there until about 9 A. M. 14 March, and delivered at 9:15 A. M.

The only evidence we can find to support this theory is that on Saturday night, 13 March, defendant's messenger called about 9:30 P. M. on Mrs. B. F. Marquette with a Western Union telegraph envelope, addressed to Mrs. John F. Marquette. Mrs. B. F. Marquette did not open the envelope, but directed the messen-

ger to where Mrs. John Marquette resided. It is further contended that the telegram delivered Sunday morning was on a blank that was dry, when if it had been copied it should have been somewhat damp from copying. We do not think the evidence at all sufficient to warrant the conclusion that the telegram set out in the complaint reached Kinston the night of the 13th. There is no connection whatever disclosed between the telegram carried to Mrs. B. F. Marquette and the one which is the basis of this action, and the mere fact that the blank was dryer than plaintiff thinks it should have been is the merest conjecture and proves nothing. But in addition to the inherent weakness and conjectural character of such proof—all the evidence in this case—plaintiff's as well as defendant's—shows conclusively that the telegram sent to Mrs. B. F. Marquette's house could not have been the one delivered to plaintiff at 9:15 Sunday morning.

It appears from plaintiff's evidence that her baby was sick and she wired her husband to his place of business, care Tregales Hertel & Co., Baltimore, on 9 March and again on 13 March. The telegrams were duly delivered to Tregales Hertel & Co., but they did not send them promptly to the sendee who was sick at his boarding house. The message of 13th was received by him 7 o'clock P. M. "It was sent out by the store," he states. Mr. Marquette at once went to Union Station, Baltimore, and took first train home.

At eight o'clock P. M. he delivered to the Postal Company at its booth in Union Station the telegram set out in the record.

The original was offered in evidence by plaintiff, and being in evidence, the defendant may of course derive any advantage it can from it. The original telegram shows on its face that it was not transmitted from the Postal's main office in Baltimore until 10:15 P. M., or after, 13 March. The delay probably occurred in transmitting it from the booth to the main office. Nor does the evidence offered by the defendant help out plaintiff's contention, but on the contrary corroborates and establishes the evident fact that the telegram did not reach Kinston until Sunday morning.

The Postal (having no office at Kinston) transmitted it to Raleigh, where it was delivered to this defendant at 11:10 P. M.

and transmitted to the relay office, Richmond, Va., at 11:47 P. M., 13 March.   The Kinston office being closed for the night, Richmond transmitted the telegram to that office Sunday morning, 14 March, at 8:52 A. M., and it was delivered at 9:15 A. M.

The plaintiff's own evidence, as well as all the other evidence in the case, shows conclusively that the telegram in question could not have been in the hands of the messenger when he went to Mrs. B. F. Marquette's house Saturday night, 13 March.   It is possible the messenger may have had some service message, or tracer, as it is called, for the plaintiff, as the Kinston office had been endeavoring by tracers to ascertain why her husband had not replied to his wife's telegrams.   But whether it was a tracer or not all the evidence proves conclusively it was not the telegram which is the basis of this action.

It may possibly be that plaintiff has turned loose the wrong defendant, but as to the appellant, the Western Union Company, the motion to nonsuit should have been allowed and the action dismissed.   It is so ordered.

Reversed.