F. U. BARNES v. POSTAL TELEGRAPH-CABLE COMPANY.

(Filed 27 September, 1911.)

1. **Telegraphs—Negligence—Delivery—Reasonable Diligence.**
   The defendant telegraph company received for transmission and for delivery over an independent telephone company, from its terminal at a nearby point, a message announcing the sickness of addressee's father and asking the addressee to come at once. The addressee, at the time in question, was four and one-half miles in the country from his home, and the defendant's agent immediately put in a continuous long-distance call and communicated the message to him upon his return. In the addressee's action to recover damages for mental anguish: *Held,* a delay of twenty minutes in the delivery under the circumstances was no evidence of negligence on the part of defendant.

2. **Telegraphs—Delivery by Telephone—Person Addressed—Messages—Contents Disclosed.**
   When the sender of a message delivers it to a telegraph company with the understanding that the company has no office at

the place of delivery, and will have to deliver it by the telephone line of an independent company to its destination at a nearby point, the agent of the defendant is only required to telephone the message to the person addressed, for the telegraph company is not allowed to disclose the contents of the message to anyone else, except with the consent of the sender and the sendee, or at least the sender or the sendee, depending upon the nature of the message or the terms of the contract.

3. **Same—Principal and Agent—Agency of Wife.**

A telegraph company has not the right to deliver a message, especially by telephone, in a manner which necessarily discloses its contents, to one not the agent of the addressee to receive telegrams, or to one who is not expressly or impliedly authorized to receive them; and there is no implied authority from the relationship of wife. Cases in which the manual delivery of the message itself is involved, distinguished.

4. **Telegraphs — Stipulations—Damages—Demand—Sixty Days—Delivery by Telephone.**

When a telegram is written by the sender on the company's regular form, containing the stipulation that a claim or demand for damages must be presented to the company in writing within sixty days after the message has been filed with it, and is received for transmission with the understanding that it is to be delivered to a nearby town by telephoning it over the lines of an independent company, it is a valid defense, under this stipulation, that the addressee received the message by telephone more than sixty days before the institution of the action and no written demand had been made within sixty days after notice to him of the delay.

APPEAL by plaintiff from *Ward, J.,* at June Term, 1911, of MARTIN.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*H. W. Stubbs and S. A. Newell for plaintiff.*
*R. C. Strong for defendant.*

WALKER, J. This action was brought to recover damages for mental anguish, alleged to have been caused by the negligent delay of the defendant in transmitting and delivering a telegram. The message, dated 26 November, 1909, was addressed by Mrs. Frank Barnes to Francis. U. Barnes at Wil-

liamston, N. C., and read as follows: "Come at once. Your father very sick." It was transmitted from the initial point to Greenville, with due promptness, and reached the office in that place at 8 o'clock A. M. The defendant had no office at Williamston, and the agent at Princess Anne so notified the sender. He also told her that it would have to be sent by telephone, owned by another company, from Greenville to Williamston, for which a charge or toll of twenty-five cents would be made by that company. When the message was received by the operator at Greenville, "he put in a long-distance call for Mr. Barnes at Williamston, and he was informed that Mr. Barnes was not there, but in the woods four or five miles away, he being a lumberman." The operator of the defendant at once instructed the telephone operator "to keep in the call for Williamston"—that is, to get Mr. Barnes as soon as it could be done; but he did not return until about 5:30 o'clock P. M., when the message was communicated to him by telephone. The plaintiff alleges that had the message been delivered to him at 8 o'clock A. M., on 26 November, the day it was sent, he could have left by the 8:28 A. M. A. C. L. Railroad Company train, and reached his father's bedside seventeen hours before his death, which occurred about 5 o'clock P. M., 27 November, 1909. We do not well see how he could have done any such thing. It would seem to be a physical impossibility. By his own calculation, there would be only twenty-eight minutes of time for the relay of the message at Greenville, and the delivery of it to him at Williamston, he being at the time, according to his own statement, four and a half miles from his home. Some time must be consumed in making the necessary connection between telegraph and telephone lines, and in making the call on the "long-distance phone" for him. He had to travel four and a half miles to Williamston to catch the train. To charge the defendant with negligence under such circumstances would be anything but justice. Plaintiff says he could have taken the 4:30 P. M. train out of Williamston on 26 November, 1909, and arrived at Princess Anne at 2:23 P. M. on 27 November, 1909, a few hours before his father's death. But the crucial fact in the case is that plaintiff was not at

home, but some distance therefrom, and this is what prevented an earlier delivery of the message. It was his misfortune and not the defendant's fault, and plaintiffs fail so often to distinguish between the two. The service rendered to the plaintiff in the effort to reach him with the message was far more prompt and efficient than was the service in *Marquette v. Telegraph Co.,* 153 N. C., 156, which we so recently held to be sufficient in law. We will hold these companies to a strict accountability in the performance of their duties and obligations to the public and their patrons, but we are impelled by our sense of justice to apply the law fairly and reasonably and not to rule harshly and oppressively in regard to the measure of diligence required of them in the delivery of messages.

It is not mental anguish alone that entitles a plaintiff to recover, however much he may have suffered, but it must be coupled with the negligence of the company, and, too, that negligence must be the proximate cause of the injury as in other cases, and there must also be the absence of negligence on the part of the plaintiff directly or "in continuous sequence" contributing to his alleged injury, as in other cases. *Brewster v. Elizabeth City,* 137 N. C., 392, and especially *Hauser v. Telegraph Co.,* 150 N. C., 557, and *Hocutt v. Telegraph Co.,* 147 N. C., 186; 2 Joyce Elec. Law, sec. 816a.

Telegraph companies are only bound to the exercise of that degree of diligence which a man of ordinary prudence would use under like or similar circumstances. They must be prompt and diligent, it is true, but to demand more of them would be to apply a rule which would result sometimes, if not in the large majority of cases, in oppression and gross injustice. We will require of them their full duty, but no more. "If the plaintiff has lost, he has not been injured, as it is expressed in one of the maxims of the law." *Gainey v. Telegraph Co.,* 136 N. C., 261.

There was some question as to the right of the telephone company to disclose the contents of the message to a person other than the addressee. This could not be done without the consent of the sender and the sendee, or at least the sender or

the sendee, depending upon the nature of the message or the terms of the contract. The telegraph company, under its ordinary contract, is not required to telephone a message, as it would impair the confidential relations assumed, but it can agree to deliver a message in this manner. 37 Cyc., 1683; *Hellams v. Telegraph Co.,* 70 S. C., 83; *Lyles v. Telegraph Co.,* 77 S. C., 174. It is a part of the undertaking of the telegraph company, with respect to the transmission and subsequent handling of the message, that its contents shall not be disclosed to any person whomsoever, without the consent of either the sender or addressee, and if it does divulge the contents without being released from the obligation of secrecy, it acts at its peril. 37 Cyc., 1684; *Cocke v. Telegraph Co.,* 84 Miss., 380. Nor has the company the right to deliver the message, especially by telephone, which necessarily discloses its contents, to one not the agent of the addressee to receive telegrams, unless he is otherwise expressly or impliedly authorized to receive it. *W. U. Tel. Co. v. Mitchell,* 91 Texas, 454 (*s. c.,* 40 L. R. A., 209). We should carefully distinguish between the mode of delivery in respect to telegrams which are to be transmitted by telephone beyond the telegraph company's line and a delivery of the telegraphic message itself by the messenger of the transmitting company. Observing the distinction will reconcile some apparently conflicting decisions. In this case the telegraph company performed its full duty and is not liable to the plaintiff.

There is a stipulation in the contract of the defendant with its patrons, that a claim or demand in writing must be presented to the telegraph company within sixty days after the message is filed for transmission. We have held this provision to be reasonable and valid. *Sherrill v. Telegraph Co.,* 109 N. C., 532; *Lewis v. Telegraph Co.,* 117 N. C., 436. In *Sykes v. Telegraph Co.,* 150 N. C., 431, we said that "the validity of a stipulation as to presenting the plaintiff's claim (in writing) within sixty days after knowledge of the nondelivery of the message has been received by him, is too well settled now to be longer questioned," citing Jones on Telegraph and Telephone

Companies, p. 380, sec. 395, and quoting therefrom a passage of the text giving the reasons for the validity of this term of the contract.

The judge was right in nonsuiting the plaintiff, and we affirm the judgment.

No error.