Civil action for damages, tried upon the following issues:
"1. Did the defendant negligently fail to transmit and deliver the telegram from Troy, N.C. as alleged in the complaint? Answer: `Yes.'
"2. Did the defendant negligently fail to deliver a service message to the sender, as alleged in the complaint? Answer: `Yes.'
"3. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: `$1,250.'"
Judgment on the verdict for plaintiff. Defendant appealed.
This case was before us at the Fall Term, 1921, and is reported in 182 N.C. 541. A new trial having been granted on the first appeal, the case was tried again at the December Term, 1922, of Randolph Superior Court, and resulted in a verdict for the plaintiff as above set out. On the argument before us in the present appeal, defendant relied chiefly upon its exception to the overruling of its motion for judgment as of nonsuit. Viewing the evidence in its (471) most favorable light for the plaintiff, the accepted position on a motion of this kind, we find the following facts sufficiently established, or as reasonable inferences to be drawn from the testimony:
The telegram in question, a death message, was delivered to the defendant's agent at Troy, N.C. on 26 December, 1919, at 5:12 p. m., reading as follows: "J. W. Hulin, Denton, N.C. Mother is dead, be buried 2 o'clock tomorrow. (Signed) A. W. Hulin." The defendant, having no telegraph office at Denton, informed the sender that the message would go to Salisbury and the agent there would take it up over the long-distance telephone. Whereupon, Frank Hulin, who sent the telegram at the request of his father, A. W. Hulin, paid the agent at Troy for the telegram and for the long-distance call from Salisbury to Denton. The message reached Salisbury in about 20 minutes; 3 minutes later a long-distance call was made over the telephone by the Salisbury operator for the plaintiff at Denton. Within 5 minutes thereafter, the telephone operator at Denton reported that the plaintiff had no telephone, and that no one near him had a telephone. The importance of the message was not disclosed to the telephone operator at Denton, and, on being asked if he would have made any special effort to locate the plaintiff had he known the character of the message, replied: "I'd have tried to have located him, of course, I'd have tried. I called *Page 496 
Johnson's store and asked if they knew where Mr. Hullin [Hulin] was and they said `Wait a minute,' and they spoke back in a minute or two and said, `They say he is out of town and no one at home.' I told that to the long-distance central. I delivered a message that he had no phone and no one near him. I made no further inquiry." Upon receipt of this information the defendant's operator at Salisbury sent the following service message to Troy: "We mail, party has no phone, no phone near him, Y. D. Hulin, Denton, N.C. signed same. D — Salisbury, N.C. 1919, 26 December, p. m. 5:42." This message reached troy [Troy] about 8 o'clock the next morning. The agent at Troy did not know where Frank Hulin or his father could be located; he knew they did not live in Troy, and for this reason he made no effort to notify them of the service message. Plaintiff received the death message at Denton through the mail about 5 p. m. on 27 December. He testified that if the Salisbury operator had mailed said message at 5:41 p. m. the day before, as he stated he did, it should have reached Denton on the morning mail in time for the plaintiff to have left Denton and attended his mother's funeral.
The evidence on behalf of the defendant was to the effect that the death message in question, being received at Troy after office hours, was taken "subject to delay," and that every reasonable effort was (472) made to deliver the message promptly. Plaintiff was not at his home in Denton at the time the Salisbury operator tried to locate him over the long-distance telephone, but was staying with a neighbor, some distance away. He knew that his mother was not well and he was expecting a message from his brother in regard to her condition, yet he made no effort to let the telephone operator know where he was or where he could be found. He had seen his mother on Thursday before Christmas; she was about 90 years old, and her demise was not unexpected. Plaintiff lived between 20 and 25 miles from his mother's home; and, while he had no telephone in his house, nor she in hers, yet such communication was available.
We think the evidence was sufficient to carry the case to the jury under the doctrine announced in Barnes v. Tel. Co., 156 N.C. 153; Alexander v.Tel. Co., 141 N.C. 75; Carter v. Tel. Co., 141 N.C. 374, and cases there cited. While the jury, under all the facts and circumstances here presented, might easily have returned a verdict for the defendant, we cannot say that there is no evidence to support the finding; nor can we hold, as a matter of law, that the amount awarded is excessive. Appellate courts do not ordinarily interfere with the discretion of the jury in assessing the amount of damages, in cases of this kind, unless it appear that the verdict must have been the result of *Page 497 
passion or prejudice, or that the amount awarded is clearly or grossly excessive. 37 Cyc., 1793, and cases collected in note. It being a question for the jury, and not for the court, to fix the amount, in cases of unliquidated damages, a verdict will not be set aside merely because it is large, or because the reviewing Court would have awarded less. 8 R. C. L. 673. See, also, opinion of Horton, C. J., inUnion P. R. Co. v. Young, 19 Kan. 488.
After a critical examination of the record, we have found no error which would justify us in disturbing the verdict and judgment; and this will be certified.
No error.