THOMPSON-ARTHUR PAVING COMPANY, A DIVISION OF APAC-CAROLINA, INC., PLAINTIFF v. LINCOLN BATTLEGROUND ASSOCIATES, LTD., LINCOLN PROPERTY COMPANY NO. 1119, MACK POGUE, ROBERT M. DICKSON, TIMOTHY B. BURNETTE, AND THE BLAIR MATTHEW POGUE LINCOLN TRUST, DEFENDANTS

No. 8818SC1019

(Filed 5 September 1989)

1. **Cancellation and Rescission of Instruments § 10.2— construction contract — extra work — settlement — rescission**

    The evidence was sufficient to support the jury's findings that a settlement agreement entered into by the parties to a construction dispute was subject to rescission because of mistake where plaintiff entered into settlement negotiations in order to resolve a dispute over $29,376.05 it claimed for extra work; plaintiff was represented at a meeting by counsel and by the person who had been in charge of the project; the person who had been in charge of the project had been transferred to Atlanta; that person testified that he had forgotten about a $22,000.00 retainage and, while he felt he had been negligent in not checking with the accounting department before signing the settlement agreement, he had come to the meeting prepared to discuss only the $29,000.00 claimed for extra work; defendant's representative at the meeting testified that he was aware of the retained funds held by defendant and that it struck him as curious that plaintiff would settle all claims for $20,000.00; no one mentioned the retainage at the meeting or in any of the correspondence that took place

THOMPSON-ARTHUR PAVING CO. v. LINCOLN BATTLEGROUND ASSOC.

[95 N.C. App. 270 (1989)]

prior to the meeting; and defendant had never asserted that plaintiff was not due the retained funds.

2. **Contracts § 12.2— construction contract—payment in lump sum or on unit price basis—contract not plain and unambiguous**

The trial court did not err in an action arising from a construction dispute by denying defendants' motions for a directed verdict and judgment notwithstanding the verdict where the evidence was subject to the interpretation that plaintiff intended to be paid on a unit price basis for work done or stone provided in excess of the amount estimated in the Proposal, whereas defendant intended payment on a lump sum basis, limited to a stated dollar amount. As the contract was not plain and unambiguous, the trial court did not err in refusing to rule as a matter of law that the contract was a lump sum contract.

3. **Contracts § 26.2; Evidence § 32— construction dispute—type of invoices used—admissible**

The trial court did not err in an action arising from a construction dispute by admitting testimony from plaintiff's witnesses that the invoices which were used were the type used with unit price contracts and were different from lump sum invoices. Evidence of conduct by the parties after executing the contract is not subject to the parol evidence rule and is admissible to show intent and meaning.

4. **Quasi Contracts and Restitution § 2.1— construction dispute—implied in fact contract—evidence sufficient**

Plaintiff was entitled to an instruction on the law of implied in fact contract and to recover the reasonable value of extra stone furnished in a construction project where plaintiff sought damages for breach of a written contract with defendants and alternatively for breach of defendants' promise to pay for extra stone rendered by plaintiff pursuant to defendants' request; defendants contend that plaintiff failed to prove any request and promise to pay for the extra stone; plaintiff's evidence tended to show that defendants' on site supervisor specifically ordered that stone be placed on the roadbeds out of sequence even though he was advised it would result in stone contamination and would ultimately require extra stone at $9.00 per ton; construction traffic did contaminate the stone as predicted; and extra stone was placed on the site. Evidence

that plaintiff did not inform defendants specifically of the amount of extra stone being used prior to final invoicing, or that extra stone was in fact needed as discussed, went to the credibility of plaintiff's claim and did not defeat that claim as a matter of law.

**5. Judgments § 55— interest—tender of payment—rescission**

Plaintiff in a construction dispute was entitled to interest on the entire judgment of $51,749.97 even though $20,000.00 had been tendered by defendants because, according to the jury, plaintiff was entitled to rescind the settlement agreement pursuant to which the $20,000.00 had been tendered. In refusing the check for $20,000.00 tendered by defendants pursuant to an agreement entered into by mistake, plaintiff was deprived of the $20,000.00 and is entitled to recover interest on that amount; to rule otherwise would be inconsistent with the jury's verdict.

APPEAL by plaintiff and defendants from Judgment of *Judge Melzer A. Morgan* entered 15 April 1988 in GUILFORD County Superior Court. Heard in the Court of Appeals 22 March 1989.

*Craige, Brawley, Lüpfert & Ross, by William W. Walker, for plaintiff appellant-appellee.*

*John T. Weigel, Jr. for defendant appellants-appellees.*

COZORT, Judge.

This appeal follows a jury verdict and entry of judgment in favor of plaintiff on plaintiff's claim for breach of contract. The jury found that a settlement agreement entered into by the parties was subject to rescission because of mistake. The jury then rejected both parties' express contract theories and awarded damages based on an implied in fact contract theory of recovery. We uphold judgment for plaintiff but remand for an additional award of interest.

The evidence at trial was as follows: On or about 5 November 1985, plaintiff submitted a Proposal and Contract Form to Lincoln Contractors, Inc. ("Lincoln"), agent for defendants, for curb, gutter, and paving work to be done by plaintiff for an apartment complex being constructed by defendants. The Proposal provided that the curb, gutter, and paving work needed for the job, in the quantities estimated in the Proposal, would cost $232,221.72. Below the typewrit-

ten list of paving materials (including stone), curb, and gutter (and the cost for each per square yard or lineal foot), were the following clauses (also typewritten): "Extra Stone, if needed @ $9.00 per ton," and "Job to be measured upon completion to determine final quantities and monies due." At the bottom of the Proposal was the following pre-printed language:

> Unless a lump sum price is to be paid for the foregoing work and is clearly so stated it is understood and agreed that the quantities referred to above are estimates only and that payment shall be made at the stated unit prices on the actual quantities of work performed by the Company. Billings to be in accordance with paragraph 2 on reverse side.

Paragraph 2 provided that "Invoices shall be rendered monthly for all work performed under this agreement during any month . . . ."

After receiving plaintiff's Proposal, Lincoln prepared three Purchase Orders and Contracts for Construction Work, which divided the work to be done by plaintiff into three separate contracts: off-site curb, gutter, and paving; on-site curb and gutter; and on-site paving. Each of the Purchase Orders had the words "Lump Sum" typed in the "quantity" column, and "Total Contract Amount Not to Exceed" next to the dollar figure. Each Contract for Construction Work contained a provision that "deviations" from plans and specifications without written authority were at Thompson-Arthur's risk. Each contract further provided that 10% of each interim billing for work performed by plaintiff would be retained and that the amount retained would be paid to plaintiff thirty days after completion of the job.

Lincoln sent plaintiff three packets. Each packet contained, stapled together, one of Lincoln's Purchase Orders and Contracts and a copy of plaintiff's Proposal.

In December 1985, plaintiff's representatives met with Lincoln's job superintendents to discuss scheduling. According to testimony, the work normally would be scheduled to allow the curb and gutter to be installed first to provide confinement for the stone, which was the base for the asphalt. Lincoln, however, did not want to delay its access to the project during the winter months. Therefore, Lincoln's superintendent requested that the stone be put down immediately for use by construction traffic, despite

THOMPSON-ARTHUR PAVING CO. v. LINCOLN BATTLEGROUND ASSOC.

[95 N.C. App. 270 (1989)]

plaintiff's warning that, if the stone was laid down first and pushed into or off the roadbed, plaintiff would have to replace it. Plaintiff requested that Lincoln's instructions be put in writing, but Lincoln's superintendent said a letter was unnecessary because of the "extra stone at $9.00 a ton" language in their contract. The superintendent also stated that he did not want copies of "stone tickets," or receipts from the quarry, but that they would "settle it up" when the job was finished.

The stone was laid down, as requested by Lincoln, prior to the installation of curb and gutter. No written authorization for extra stone was issued. During the project, plaintiff sent Lincoln monthly invoices from March through September. The invoices showed paving and curb and gutter work, expressed in square yards or lineal feet, which was completed during the billing period. According to defendants, prior to the final invoicing in September, the invoices did not specify that there were charges for extra stone. Nor did plaintiff advise Lincoln of the quantities of extra stone used. In September of 1986, after making on-site measurements, plaintiff submitted to defendants a billing for 3,101.58 tons of extra stone, an amount confirmed by stone tickets also sent to defendants. The total charge for the extra work was $29,376.05.

Contending that they had a "lump sum" contract, Lincoln refused to pay for the extras. Plaintiff filed a Notice of Claim of Lien for $29,376.05. At the time, Lincoln also held approximately $22,000.00 in retained funds. The amount retained was not reflected in the Claim of Lien, and, during conversations about the amount in dispute for the extra work, neither party mentioned the retainage. In March of 1987 the parties met to discuss settling their dispute. At that meeting, counsel for defendants wrote "$29,000.00" on a piece of paper and asked if that was approximately the amount in dispute. Plaintiff's lawyer, who was unaware of the retainage, said "yes." Counsel for defendants then asked how much plaintiff wanted in settlement. Having been informed by plaintiff that no other amounts were due, plaintiff's lawyer made an offer to settle for $20,000.00, which defendant accepted. The parties thereafter entered into a Settlement Agreement releasing each party "of any and all claims" under their contract in consideration of the $20,000.00. The following day, plaintiff discovered that the retainage had not been paid and informed Lincoln that it did not consider the $20,000.00 settlement to include the retainage. Lincoln expressed its contrary view, whereupon plaintiff returned the check for $20,000.00. Lincoln

**THOMPSON-ARTHUR PAVING CO. v. LINCOLN BATTLEGROUND ASSOC.**

[95 N.C. App. 270 (1989)]

refused to accept the check and returned it to plaintiff. The un-cashed check was placed in evidence at trial.

The following issues were submitted to the jury and were answered as indicated: (The court's road map instructions are in capitals, as they were on the verdict sheet.)

*Issue One (a)*

1(a).  At the meeting on March 6, 1987, was Thompson-Arthur's vice president, Steve Arthur, mistaken regarding the total amount Thompson-Arthur claimed due from Lincoln on the Lincoln Green II project?

ANSWER: __Yes__

IF YOU ANSWER ISSUE NUMBER ONE(A) "YES," CONSIDER ISSUE NUMBER ONE(B).

IF YOU ANSWER ISSUE NUMBER ONE(A) "NO," RETURN TO THE COURTROOM.

*Issue One (b)*

1(b).  If so, did Lincoln's agents have reason to know of Thompson-Arthur's mistake?

ANSWER: __Yes__

IF YOU ANSWER ISSUE NUMBER ONE(B) "YES," CONSIDER ISSUE NUMBER ONE(C)

IF YOU ANSWER ISSUE NUMBER ONE(B) "NO," RETURN TO THE COURTROOM.

*Issue One (c):*

1(c).  On March 6, 1987, did Thompson-Arthur, through vice president Steve Arthur assume the risk of a mistake by treating as sufficient Arthur's limited knowledge of the total amount claimed due on the Lincoln Green II project?

ANSWER: __No__

IF YOU ANSWER ISSUE NUMBER ONE(C) "YES," RETURN TO THE COURTROOM.

IF YOU ANSWER ISSUE NUMBER ONE(C) "NO," CONSIDER ISSUE NUMBER TWO.

*Issue Two:*

2. Did the parties intend that the language "lump sum" and the language "Unless a lump sum price is to be paid for the foregoing work and it is clearly so stated, it is understood and agreed that the quantities referred to above are estimates only and that payment shall be made at the stated unit prices on the actual quantities of work performed by the company" would mean that Lincoln was bound to pay Thompson-Arthur based upon final quantities of work done (unit price contracts)?

ANSWER:   No

IF YOU ANSWER ISSUE NUMBER TWO "YES," SKIP ISSUES THREE, FOUR, FIVE AND SIX, AND CONSIDER ISSUE NUMBER SEVEN.

IF YOU ANSWER ISSUE NUMBER TWO "NO," CONSIDER ISSUE NUMBER THREE.

*Issue Three:*

3. Did the parties intend that the language "lump sum" and the language "Unless a lump sum price is to be paid for the foregoing work and it is clearly so stated, it is understood and agreed that the quantities referred to above are estimates only and that payment shall be made at the stated unit price on the actual quantities of work performed by the company" would mean that Lincoln was bound to pay Thompson-Arthur the lump sum of $232,221.72 (lump sum contracts)?

ANSWER:   No

IF YOU ANSWER ISSUE NUMBER THREE "YES," CONSIDER ISSUE NUMBER FOUR.

IF YOU ANSWER ISSUE NUMBER THREE "NO," SKIP ISSUES FOUR, FIVE, SIX AND SEVEN, AND CONSIDER ISSUE NUMBER EIGHT.

*Issue Four:*

4. Did Lincoln, through its job superintendent, waive the requirement of written change orders and request stone, in addition to the quantities mentioned on Lincoln's purchase orders?

ANSWER:   _____

IF YOU ANSWER ISSUE NUMBER FOUR "YES," CONSIDER ISSUE NUMBER FIVE.

**THOMPSON-ARTHUR PAVING CO. v. LINCOLN BATTLEGROUND ASSOC.**

[95 N.C. App. 270 (1989)]

IF YOU ANSWER ISSUE NUMBER FOUR "NO," SKIP ISSUE NUMBER FIVE AND CONSIDER ISSUE NUMBER SIX.

*Issue Five:*

5. What amount, if any, is Thompson-Arthur entitled to recover of Lincoln for extra stone?

ANSWER: _____

NO MATTER HOW YOU ANSWER ISSUE NUMBER FIVE, CONSIDER ISSUE NUMBER SIX.

*Issue Six:*

6. What amount, if any, is Thompson-Arthur entitled to recover under the terms of lump sum contracts with Lincoln for retainage?

ANSWER: _____

IF YOU REACH THIS ISSUE, AFTER ANSWERING IT, YOU SHOULD RETURN TO THE COURTROOM.

*Issue Seven:*

7. What amount is Thompson-Arthur entitled to recover of Lincoln following final invoicing for retainage, extra stone, and work done under unit price contracts?

ANSWER: _____

IF YOU REACH THIS ISSUE, AFTER ANSWERING IT, YOU SHOULD RETURN TO THE COURTROOM.

*Issue Eight:*

8. What amount, if any, is Thompson-Arthur entitled to recover for any balance due on the reasonable value of extra stone?

ANSWER: $29,376.05

IF YOU REACH THIS ISSUE, AFTER ANSWERING IT, YOU SHOULD RETURN TO THE COURTROOM.

Defendants' motions for judgment notwithstanding the verdict and for new trial were denied. The parties stipulated that, if the jury reached Issue Eight, it should not consider the retainage, and that the court would add $22,373.92 to the jury award. Accordingly, the trial court entered judgment for plaintiff in the amount

of $51,749.97. The court further ordered that defendants pay interest at the legal rate on $31,749.97 from 1 November 1986. The $20,000.00 amount tendered by defendants was excluded from the interest award.

On appeal, defendants assign error to the trial court's denial of their motion for judgment notwithstanding the verdict and alternative motion for a new trial. They argue that (1) the settlement agreement was a full and final settlement between the parties and was not subject to rescission because of plaintiff's unilateral mistake, and (2) the contract between the parties was a lump sum contract as a matter of law. Defendants also assign error to (3) the admission of testimony that the invoices sent by plaintiff to Lincoln were consistent with a unit price, versus lump sum, contract, and (4) the trial court's instruction to the jury regarding the measure of damages applicable for breach of an implied in fact contract. On cross appeal, plaintiff assigns error to the trial court's exclusion of $20,000.00 from the amount upon which plaintiff received prejudgment interest. We initially address defendants' appeal, turning first to the issue of rescission of the settlement agreement.

[1] Ordinarily, for mistake of fact to justify the remedy of rescission, there must be mutual mistake of fact. *Howell v. Waters*, 82 N.C. App. 481, 487, 347 S.E.2d 65, 69 (1986), *disc. rev. denied*, 318 N.C. 694, 351 S.E.2d 747 (1987). Thus, "as a general rule relief will be denied where the party against whom it is sought was ignorant that the other party was acting under a mistake and the former's conduct in no way contributed thereto." *Id.* (quoting *Marriott Financial Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 136, 217 S.E.2d 551, 560 (1975)) (quoting 77 Am. Jur. 2d *Vendor and Purchaser* § 51) (emphasis omitted). In addition, a party who has assumed the risk of mistake (*e.g.*, "he is aware, at the time the contract is made that he has only a limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient") is not entitled to rescission. *Howell*, 82 N.C. App. at 488, 347 S.E.2d at 70 (quoting Restatement (Second) Contracts § 154 (1979)). Whether he has assumed the risk of mistake is a question of fact for the jury. *Id.* at 489, 347 S.E.2d at 70.

The evidence, viewed in the light most favorable to plaintiff, tends to show that plaintiff entered into settlement negotiations in order to resolve a dispute over $29,376.05 it claimed for extra

work. Plaintiff was represented at the March 1987 meeting by counsel and by Ernest Arthur, who had been in charge of the Lincoln project but, by the time the project was being concluded, had been transferred to Atlanta. At trial, Mr. Arthur testified that he had forgotten about the retainage and felt that he had been negligent in not checking with the accounting department before signing the Agreement, but that he had come to the meeting prepared to discuss only the approximately $29,000.00 claimed for extra work. Lincoln's representative at the meeting testified at trial that he was aware of the retained funds held by Lincoln and that it "struck me as curious" that plaintiff would settle all claims for $20,000.00. No one mentioned the retainage at the meeting or in any of the correspondence that took place prior to the meeting. Lincoln had never asserted that plaintiff was not due the retained funds.

We believe the evidence supports the jury's findings. Plaintiff had a potential claim for approximately $50,000.00 for the disputed extra work and the retained amount. Yet its first offer in settlement was for $20,000.00, which was less than the undisputed amount held in retainage. "Where one of the parties, through mistake, names a consideration that is out of all proportion to the value of the subject of negotiation, and the other party, realizing that a mistake must have been committed, takes advantage of it and refuses to let the mistake be corrected when it is discovered, he cannot, under these conditions, claim an enforceable contract." 17 Am. Jur. 2d *Contracts* § 148. *See also* Restatement (Second) Contracts § 153 (1981).

Furthermore, the evidence supports the jury's finding that plaintiff did not assume the risk of mistake by treating as sufficient Mr. Arthur's limited knowledge of the total amount claimed due. This case is not analogous to a case where a party knows its knowledge is limited, assumes the risk of mistake because of that limited knowledge, and then seeks to rescind a contract because the facts were not as he had hoped. *See* Dobbs, *Remedies* § 11.2 (1973). The jury's findings being supported by the evidence, we hold plaintiff was properly allowed to rescind the Settlement Agreement because of mistake.

[2] Lincoln next argues that the parties' written agreement established a lump sum contract as a matter of law, and that the trial court's denial of its motions for directed verdict and judgment

notwithstanding the verdict was error. Lincoln concedes that there was a question of fact as to whether plaintiff's Proposal was a part of the parties' contract, but it argues that there was no inconsistency among those documents. We do not agree. The evidence is subject to the interpretation that plaintiff intended to be paid on a unit price basis for work done or stone provided in excess of the amount estimated in the Proposal, whereas Lincoln intended payment on a lump sum basis, limited to a stated dollar amount. As the contract was not plain and unambiguous, the trial court did not err in refusing to rule as a matter of law that the contract was a lump sum contract. A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law, but, if an agreement is ambiguous, interpretation of the contract is a question for the jury to resolve. *Cleland v. The Children's Home, Inc.*, 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983).

[3]  We likewise overrule defendants' assignment of error to the trial court's admission of testimony from plaintiff's witness that the invoices which were used in plaintiff's monthly billings to Lincoln were the type of invoices it used with unit price contracts and were different from its lump sum invoices. "Evidence of conduct by the parties after executing the contract is not subject to the parol evidence rule, and is admissible to show intent and meaning." *Cordaro v. Singleton*, 31 N.C. App. 476, 479, 229 S.E.2d 707, 710 (1976).

In any event, the jury rejected both parties' respective interpretations of their written contract and, finding a contract implied in fact, awarded damages for the reasonable value of the extra stone. Defendants' remaining assignments of error challenge the sufficiency of the evidence to justify an instruction on an implied in fact contract theory of recovery and the measure of damages applicable to the case at bar.

[4]  An implied in fact contract is an agreement between parties, but the terms of the agreement have not been fully expressed in words and, instead, are established by the parties' conduct. *Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 646, 312 S.E.2d 215, 218 (1984). In contrast, a contract implied in law is not based on some actual agreement between the parties, but is a contract implied by law to prevent the unjust enrichment of a party. *Id.* at 645, 312 S.E.2d at 217; *Wright v. Wright*, 305 N.C. 345, 289 S.E.2d 347 (1982). Damages under an implied in fact

contract are for the reasonable value of the services rendered by the plaintiff pursuant to the defendant's request and agreement to pay therefor. *Ellis Jones*, 66 N.C. App. at 646, 312 S.E.2d at 218. On the other hand, recovery under an implied in law contract theory, or recovery on quantum meruit, is for the reasonable value of materials and services accepted by and that benefit the defendant. *Id.* at 647, 312 S.E.2d at 218. In cases involving improvements to realty, the plaintiff's recovery on quantum meruit has been limited to the benefit of the improvement to the defendant per the enhanced value of the property. *See Jones v. Sandlin*, 160 N.C. 150, 75 S.E. 1075 (1912), *cited with approval* in *Wright*, 305 N.C. at 350, 289 S.E.2d at 350 n.4.

In the instant case, plaintiff did not seek recovery on quantum meruit. Rather, it sought damages for breach of the written contract with defendants and, alternatively, for breach of defendants' promise to pay for the extra stone rendered by plaintiff pursuant to defendants' request. Defendants contend that plaintiff failed to prove any request and promise to pay for the extra stone; that plaintiff's recovery should therefore have been limited to the amount by which defendants' property was enhanced; and that there was a failure of proof as to that enhancement value. We do not agree with the initial premise of that argument.

Defendants admitted that $9.00 per ton was a reasonable price for extra stone. Furthermore, plaintiff's evidence tended to show that defendants' on-site supervisor specifically ordered that stone be placed on the roadbeds out of sequence even though he was advised that it would result in stone contamination and would ultimately require extra stone at $9.00 per ton; that construction traffic did contaminate the stone as predicted; and that extra stone was in fact placed on the site as evidenced by the stone tickets and other testimony. Evidence that, prior to final invoicing, plaintiff did not inform defendants specifically of the amount of extra stone being used, or that extra stone was in fact needed as discussed, was evidence going to the credibility of plaintiff's claim; such evidence did not defeat that claim as a matter of law. Plaintiff was therefore entitled to the instruction on the law of implied in fact contract and to recover the reasonable value of the extra stone. These assignments of error are therefore overruled.

[5] Plaintiff contends on appeal that the trial court erred in awarding interest only on $31,749.97 of the $51,749.97 judgment. We hold that plaintiff was entitled to interest on the entire judgment.

N.C. Gen. Stat. § 24-5 provides: "In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach." N.C. Gen. Stat. § 24-5(a) (1988). The trend in this State is to allow interest in almost all types of cases involving breach of contract. *Environmental Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 307, 330 S.E.2d 627, 629 (1985). *See also Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 402-03, 331 S.E.2d 148, 158-59, *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985). " 'Interest is the compensation allowed by law, or fixed by the parties, for the use, or forbearance, or detention of money.' " *Parker v. Lippard*, 87 N.C. App. 43, 49, 359 S.E.2d 492, 496, *modified in part on reh'g*, 87 N.C. App. 487, 361 S.E.2d 395 (1987) (quoting *Ripple v. Mortgage & Acceptance Corp.*, 193 N.C. 422, 424, 137 S.E. 156, 157 (1927) ).

Although a valid tender of payment for the full amount, plus interest to date, will be effective to stop the running of interest, *see Ingold v. Phoenix Assur. Co.*, 230 N.C. 142, 52 S.E.2d 366 (1949), the $20,000.00 tendered by defendants was pursuant to a Settlement Agreement, which, according to the jury, plaintiff was entitled to rescind. We believe that, in refusing the check for $20,000.00 tendered by defendants pursuant to an agreement entered into by mistake, plaintiff was deprived of the $20,000.00 and is entitled to recover interest on that amount. To rule otherwise would be inconsistent with the jury's verdict. We therefore remand with instructions that the trial court award interest at the legal rate on the entire judgment of $51,749.97.

No error; remanded for additional award of interest.

Judges PHILLIPS and PARKER concur.