BERGER, Judge.
Kane & Silverman, P.C., ("Defendant Firm") and Howard Silverman ("Defendant") (collectively, "Defendants") appeal from an order denying their motion to dismiss entered December 21, 2015, and from a final judgment entered January 17, 2017 (the "Final Judgment"). Defendants argue that the trial court had no personal jurisdiction over them and erred when it denied Defendants' motion to dismiss. Also, Defendants assert that the trial court's conclusion of law that an enforceable fee-division agreement existed between the parties was unsupported by its findings of fact. We disagree with both of Defendants' arguments and affirm the trial court.
Teague & Glover, P.A. ("Plaintiff Firm") cross-appeal from the Final Judgment, contending that the trial court erred by not awarding Plaintiff Firm court costs and prejudgment interest. We agree that the trial court erred when it declined to award prejudgment interest and remand for the calculation and award of this interest. However, we disagree with Plaintiff Firm that it was error not to award costs and affirm the trial court ruling.
Factual and Procedural Background
On August 28, 2006, then fifteen-year-old Kaitlin Jennings ("Miss Jennings") was struck by a vehicle while she was riding her bicycle in Dare County, North Carolina. Miss Jennings was vacationing from Pennsylvania with her father, James Jennings ("Mr. Jennings").
After the accident, Mr. Jennings contacted Defendant, an attorney licensed in Pennsylvania and practicing in Philadelphia at Defendant Firm. Mr. Jennings sought assistance handling any claims related to his daughter's accident, but Mr. Jennings did not enter into any agreement with Defendants at that time. Defendant offered to refer the Jennings to a North Carolina attorney who could help them with their claim.
In January 2007, Defendant contacted C. Douglas Maynard, Jr. ("Maynard"), a North Carolina attorney who practices in Winston-Salem, about Miss Jennings' claim. After discussing the claim with the Jennings, Maynard proposed a fee agreement to Defendant in which Maynard's firm and Defendant Firm would divide the legal fees. On March 1, 2007, Defendant notified Maynard that Defendants were unwilling to enter into a fee contract in North Carolina. After further review of the case, Maynard decided that it would be more cost efficient to refer the case to an attorney closer to Dare County.
In April 2007, Maynard referred the Jennings to Danny Glover, Jr. ("Plaintiff"), a North Carolina attorney and member of Plaintiff Firm. Plaintiff sent a letter and his firm's standard fee agreement in July 2007 to the Jennings to confirm that Plaintiff Firm would be representing the Jennings on all claims arising from Miss Jennings' accident. On July 31, 2007, Mr. Jennings signed the fee agreement sent to him by Plaintiff, but did not mail it to Plaintiff Firm until November 2007. Under their agreement, Plaintiff Firm would receive one-third of any money the Jennings were awarded. The fee agreement also provided that Plaintiff could associate with other attorneys outside the firm as necessary and in the best interest of the Jennings. Prior to the execution of this fee agreement, Plaintiff was unaware that the Jennings originally discussed the matter with Defendant. The Jennings also did not require Plaintiff to work with Defendants as a condition of its representation.
After Plaintiff received the signed fee agreement from Mr. Jennings in November 2007, Plaintiff wrote to Mr. Jennings confirming his representation and requesting for Mr. Jennings to provide the contact information for the Pennsylvania attorney who had referred him to Plaintiff. Plaintiff wished to contact said Pennsylvania attorney to discuss any underlying Pennsylvania underinsured motorist ("UIM") claims. On November 17, 2007, Mr. Jennings emailed Defendant's contact information to Plaintiff, but explained that that the Jennings had "not signed an agreement with [Defendant] but if [they] must get an attorney in PA [Mr. Jennings] would appreciate working with [Defendant]."
On March 13, 2008, Plaintiff contacted Defendant for the first time. During that initial phone call, Defendant informed Plaintiff that his involvement in the Jennings matter thus far had been limited to referring the Jennings to Maynard. Plaintiff explained the details of his investigation and advised Defendant of the likelihood that any claim against the tortfeasor would likely be barred by North Carolina's contributory negligence defense. Because an action against the tortfeasor would likely fail, Plaintiff asked Defendant about the procedures necessary to bring the Jennings' UIM carrier into the North Carolina lawsuit. Plaintiff and Defendant ultimately agreed that the Jennings would have a better chance of recovery if Defendant proceeded with the UIM claim in Pennsylvania while Plaintiff protected the tolling of the statute of limitations on the UIM claim by filing suit in North Carolina. Plaintiff and Defendant concluded their March 13, 2008 phone call by verbally agreeing to split the contingency fee, so Defendants would receive two-thirds and Plaintiff would receive one-third of the total fee recovered. Plaintiff also agreed that he would send Defendant his complete case file.
Following his discussion with Defendant, Plaintiff contacted Mr. Jennings to advise him of Defendant Firm's involvement in the case. Plaintiff informed Mr. Jennings that Defendants' contributions would not increase the amount of attorney fees that the Jennings would be responsible for under their current contingency fee agreement.
On May 1, 2008, Plaintiff sent a copy of his entire file to Defendants along with a cover letter stating:
Enclosed you will find a copy of my complete file, which includes all medical records and bills I have obtained thus far, my investigator's report, our clients' recorded statement and insurance policy, a CD of pictures, my costs itemization, the medical records and bills itemization, and all of my correspondence to date.
This will also confirm that you will proceed against the UIM carrier in Pennsylvania. In that action you will recover all compensation from the UIM carrier, and you will then give the UIM carrier a credit for the amount of the defendant's applicable liability policy, which I understand is $30,000. We have agreed to an attorney's fees split of 2/3 to you and 1/3 to me. You have also advised that following the conclusion of your work in Pennsylvania, I can then proceed to collect the $30,000 liability proceeds here, if we wish to do so. Accordingly, I will file suit here only to protect the 3-year North Carolina statute of limitations.
A copy of this cover letter was simultaneously mailed to Mr. Jennings to confirm Plaintiff and Mr. Jennings' earlier telephone call.
In June 2008, Mr. Jennings signed a separate fee agreement with Defendant Firm. This separate agreement was for Defendant Firm to represent the Jennings for Miss Jennings' personal injuries claims-it was not limited to the Pennsylvania UIM claim. Plaintiff was not informed about this new contract between Mr. Jennings and Defendant Firm even though it directly conflicted with the existing fee agreement between Mr. Jennings and Plaintiff.
In a letter to Plaintiff, dated November 4, 2008, Defendant acknowledged that Plaintiff referred the Jennings case to him and that Defendant would keep Plaintiff informed regarding the development of the claim. On November 18, 2008, Defendant sent another letter to Plaintiff, in which Defendant asked Plaintiff if a North Carolina lawsuit had been filed, and he also inquired about statute of limitations issues in North Carolina.
Miss Jennings turned eighteen-years old on March 9, 2009. In April 2009, Miss Jennings received a letter from Defendant Firm requesting that Miss Jennings sign a fee agreement with Defendant Firm and grant Defendant Firm permission to continue to speak with her parents about her case. Miss Jennings signed the fee agreement. Similar to the fee agreement that Mr. Jennings signed with Defendant Firm in June 2008, this fee agreement was for Defendant Firm to represent Miss Jennings for her personal injury claims-it was not limited to the Pennsylvania UIM claim. Plaintiff was also not informed about Miss Jennings' new fee agreement with Defendant Firm.
Plaintiff and Defendants continued to communicate and strategize with Mr. Jennings regarding Miss Jennings' case. In May 2012, Defendant Firm contacted Plaintiff about deposing North Carolina witnesses for the UIM claim. The associate attorney represented the Jennings at the proceeding depositions, which were conducted in Nags Head, North Carolina, on October 22 and 23, 2012. The deposition transcripts were captioned in a manner that reflected both the Pennsylvania UIM claim and the North Carolina lawsuit.
In 2013, the UIM claim proceeded to arbitration. Throughout arbitration, Defendant Firm heavily relied on Plaintiff's assistance and expertise regarding North Carolina negligence law. On June 17, 2013, the arbitration panel awarded Miss Jennings $275,000.00, with a credit of $30,000.00, for a net recovery of $245,000.00. The award proceeds were distributed to Miss Jennings and to Defendant Firm on June 27, 2013. Defendant Firm recovered $81,665.85. Defendants did not disclose the contingency fee disbursement to Plaintiff. In the following months, Plaintiff contacted Defendant numerous times by telephone and email regarding Plaintiff's portion of the recovered fee. On January 23, 2014, Defendant finally responded to Plaintiff via email, in which Defendant acknowledged that he agreed to a referral fee, but insisted that he did not owe Plaintiff because Plaintiff had not sufficiently fulfilled his promised performance.
Plaintiff filed its complaint against Defendants on July 23, 2015 in North Carolina. Plaintiff sued Defendants for breach of contract and asserted that it was entitled to recover $30,555.56 plus costs and interest from Defendants, both jointly and severally. Defendants moved to dismiss for lack of personal jurisdiction on October 5, 2015. The trial court denied Defendants' motion to dismiss on December 21, 2015.
Following a bench trial, the trial court concluded that Defendants breached an enforceable fee agreement and entered judgment in favor of Plaintiff in the amount of $27,222.00. The trial court denied Plaintiff's request for prejudgment interest and costs.
The parties timely appealed. On appeal, Defendants challenge the trial court's (1) denial of Defendants' motion to dismiss for lack of personal jurisdiction and (2) conclusion that an enforceable fee agreement existed between the parties. On cross-appeal, Plaintiff contends that the trial court erred by not granting Plaintiff court costs and prejudgment interest.
Standard of Review
"The standard of review on appeal from a non-jury trial is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. We review the trial court's conclusions of law de novo. " 42 East, LLC v. D.R. Horton, Inc. , 218 N.C. App. 503, 508, 722 S.E.2d 1, 5 (2012) (citations and quotation marks omitted). "Findings of fact supported by competent evidence are binding on appeal, notwithstanding the existence of contradictory evidence." Terry's Floor Fashions, Inc. v. Crown General Contractors, Inc. , 184 N.C. App. 1, 10, 645 S.E.2d 810, 816 (2007) (citations omitted). Additionally, "[w]here no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citation omitted). Therefore, "the scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal." Id. at 98, 408 S.E.2d at 731 (citing N.C.R. App. P. 10(a) ).
Analysis
I. Personal Jurisdiction
Defendants first argue that the trial court erred in denying Defendants' motion to dismiss for lack of personal jurisdiction over Defendants. We disagree.
The analysis used to determine the existence of personal jurisdiction in North Carolina is well-established. First, jurisdiction over the action must be authorized by N.C.G.S. § 1-75.4, our state's long-arm statute. Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.
Nat'l Util. Review, LLC, v. Care Centers, Inc. , 200 N.C. App. 301, 303, 683 S.E.2d 460, 463 (2009) (citations and quotation marks omitted).
Section 1-75.4(5) of North Carolina's long-arm statute states, in relevant part, that a trial court has personal jurisdiction over a "person served in an action ... under any of the following circumstances," including:
(5) Local Services, Goods or Contracts.-In any action which:
a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or
b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or
c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or
d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction. ...
N.C. Gen. Stat. § 1-75.4(5) (2017). "The provisions of G.S. 1-75.4(5) are to be liberally construed in favor of finding personal jurisdiction, subject only to due process considerations." Williamson Produce, Inc. v. Satcher , 122 N.C. App. 589, 593, 471 S.E.2d 96, 98 (1996) (citation and quotation marks omitted).
The Due Process Clause of the Fourteenth Amendment limits the power of a state to exercise in personam jurisdiction over a non-resident defendant. In determining whether the exercise of personal jurisdiction comports with due process, the crucial inquiry is whether the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.
To generate minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of North Carolina. The relationship between the defendant and the forum state must be such that the defendant should reasonably anticipate being hauled into a North Carolina court.
Tejal Vyas, LLC v. Carriage Park Ltd. P'ship , 166 N.C. App. 34, 38-39, 600 S.E.2d 881, 885-86 (2004) (purgandum[1] ), aff'd per curiam , 359 N.C. 315, 608 S.E.2d 751 (2005).
For a defendant to have sufficient minimum contacts with the forum state, our courts have long recognized that
a defendant need not physically enter North Carolina in order for personal jurisdiction to arise. Rather, there may be personal jurisdiction where the record is clear that defendant voluntarily entered into a contract with a substantial connection with this State. ... Having reaped the benefits of the underlying contract, defendants cannot [then] claim that it offends due process to require them to appear in North Carolina to defend an action based on their personal guaranties of that contract.
Better Business Forms, Inc. v. Davis , 120 N.C. App. 498, 501, 462 S.E.2d 832, 834 (1995) (citations and quotation marks omitted).
When determining whether a contract has a "substantial connection" with North Carolina, factors to consider include: (1) whether the contract was "made" in the forum state; (2) whether the defendant knew that the contract was going to be "substantially performed" in the forum state; (3) and whether the defendant was aware that the other contracted party resided in the forum state. Tom Togs, Inc. v. Ben Elias Indus. Corp. , 318 N.C. 361, 367, 348 S.E.2d 782, 786-87 (1986) ; see also Nat'l Util. Review, LLC , 200 N.C. App. at 305, 683 S.E.2d at 464. "Under North Carolina law, a contract is 'made' in the place where the last act necessary to make it binding occurred." Tom Togs, Inc. , 318 N.C. at 365, 348 S.E.2d at 785 (citation omitted).
Here, the trial court concluded in the Dismissal Order that personal jurisdiction over Defendants was proper pursuant to Section 1-75.4(5)(a), (b), (c), and (d), and that the exercise of jurisdiction neither violates Defendants' due process rights nor works a substantial injustice for the action to be tried in North Carolina. The trial court's conclusion that personal jurisdiction over Defendants is proper is supported by the trial court's findings that Defendant authorized Plaintiff to perform services within North Carolina on Defendants' behalf. Also, Defendant and Plaintiff agreed that Defendant would pursue the UIM claim in Pennsylvania while Plaintiff would sue the tortfeasor in North Carolina in order to prevent Defendant's UIM claim from being time-barred by the statute of limitations. The trial court found that "Silverman and Glover agreed that Glover would send him his complete file," which included "numerous medical records and bills ... along with Plaintiff's investigator's report regarding the witness interviews and other documents" that Plaintiff had compiled while pursuing the action in North Carolina. The trial court identified numerous instances when Defendant or other attorneys in his firm contacted Plaintiff to provide status updates, discuss strategy, and/or question Plaintiff regarding North Carolina law.
These findings properly support the trial court's conclusion that personal jurisdiction over Defendants is proper under Section 1-75.4(b). Since our long-arm statute authorizes North Carolina courts to assert personal jurisdiction over out-of-state defendants under any one of its applicable provisions, no discussion of the trial court's conclusion that personal jurisdiction over Defendant under Sections 1-75.4(5)(a), (c), and (d) is necessary.
The trial court's conclusion that "[t]he exercise of jurisdiction comports to federal due process," is also supported by its findings. The findings demonstrate that the underlying fee agreement had a "substantial connection" with North Carolina. The trial court demonstrated that both Defendant and Defendant Firm were aware that Plaintiff resided in North Carolina and was going to perform those duties imposed by the contract within North Carolina. Plaintiff filed the claim in North Carolina to prevent Defendant's UIM claim from being time barred. Accordingly, there was a substantial connection between the fee agreement and North Carolina, and so these findings support the trial court's conclusion that exerting personal jurisdiction over Defendants comports with due process.
Finally, the trial court's conclusion that it would not be a "substantial injustice for the action to be tried in Pasquotank County, North Carolina," is supported by its findings. The trial court found that the Jennings family was awarded $245,000.00 under Defendants' UIM claim. Also, it found that Defendants have failed to show "that it would be more convenient for this litigation to be in Pennsylvania [rather] than North Carolina," especially because it was not inconvenient for an attorney from Defendant Firm to travel to "Dare County, North Carolina, to take depositions of witnesses in the representation of the minor, Kaitlin Jennings." Moreover, the trial court's other findings tend to show that the UIM award would not have been possible without Plaintiff's support. Because Defendants voluntarily entered into and "reaped the benefits" of the underlying fee agreement, Defendants may not now "claim that it offends due process to require them to appear in North Carolina to defend an action based on their personal guaranties of that contract." Better Business Forms , 120 N.C. App. at 501, 462 S.E.2d at 834.
As the trial court's findings support its conclusion that personal jurisdiction over Defendants was proper, we affirm the trial court's denial of Defendants' motion to dismiss for lack of personal jurisdiction.
II. Contract
Defendants next argue that the trial court erred in concluding that a fee agreement existed between the parties. Defendants alternatively contend that the fee agreement is unenforceable because Miss Jennings did not ratify the agreement when she reached the age of majority, and it was created in violation of North Carolina's Rules of Professional Conduct and is therefore void as against public policy. We disagree.
A contract is the product of two or more consenting minds making a commitment about the same thing, binding on the parties at law or in equity. It is true that where there has been no meeting of the minds on the essentials of the treaty, no contract results. An offer may invite an acceptance to be made by merely an affirmative answer, or by performing or refraining from performing a specified act, or may contain a choice of terms from which the offeree is given the power to make a selection in his acceptance.
Durant v. Powell , 215 N.C. 628, 633, 215 S.E.2d 884, 887 (1939) (citations and quotation marks omitted). "In the formation of a contract an offer and acceptance are essential elements; they constitute the agreement of the parties." Yeager v. Dobbins , 252 N.C. 824, 828, 114 S.E.2d 820, 823-24 (1960) (citation and quotation marks omitted). "An acceptance by conduct is a valid acceptance." Cap Care Grp., Inc. v. McDonald , 149 N.C. App. 817, 822, 561 S.E.2d 578, 582 (2002) (citation omitted).
Here, neither party contests any findings of fact and so they are therefore "presumed to be supported by competent evidence and [are] binding on appeal." Koufman, 330 N.C. at 97, 408 S.E.2d at 731 (citation omitted). The trial court's findings show that Plaintiff presented the fee division offer during a telephone call with Defendant on March 13, 2008 and in a follow-up letter on May 1, 2008. Defendant accepted this offer in his November 4, 2008 letter to Plaintiff, in which Defendant "acknowledged that the Jennings case was referred to him by Plaintiff and that he would keep [Plaintiff] up to date on the development of the claim." The conduct of the parties also tended to show that there had been an offer and acceptance. Starting on November 18, 2008, Defendant and other attorneys in Defendant Firm began to seek out Plaintiff's expertise and strategic advice as they prosecuted the UIM claim, which Plaintiff continually provided. By requesting and directly benefitting from Plaintiff's performance, Defendants further demonstrated their intent to be bound to the terms of the fee agreement. Accordingly, the trial court's conclusion that a fee agreement was created between the parties was properly supported by the trial court's findings of fact.
Defendants alternatively challenge the enforceability of the fee agreement by noting that "Kaitlin Jennings was unaware of her father's original fee agreement with [Plaintiff]" and arguing that "there is no evidence of record that she ever consented to [Plaintiff]'s representation of her, or to his receipt of a fee." Defendants assert that the fee agreement is unenforceable because Miss Jennings never ratified the agreement when she reached the age of majority.
"A minor is any person who has not reached the age of 18 years." N.C. Gen. Stat. § 48A-2 (2017).
It is well settled that the conventional contracts of an infant, except those for necessities and those authorized by statute, are voidable at the election of the infant and may be disaffirmed by the infant during minority or within a reasonable time after reaching majority.
....
[T]he right of disaffirmance should be exercised within a reasonable time after the infant attains [her] majority, or else [her] neglect to avail [her]self of this privilege should be deemed an acquiescence and affirmation. ... And it is no more than just and reasonable that if [she] silently acquiesces ... and makes no effort to express [her] dissatisfaction with [her] act, [she] should, after the lapse of a reasonable time, dependent upon circumstances, be considered as fully ratifying it.
Bobby Floars Toyota, Inc. v. Smith , 48 N.C. App. 580, 582-83, 269 S.E.2d 320, 321-22 (1980) (citations and quotation marks omitted) (emphasis added). "What is a reasonable time depends upon the circumstances of each case, no hard-and-fast rule regarding precise time limits being capable of definition." Id. at 582, 269 S.E.2d at 321 (purgandum ).
The privilege of disaffirmance may [also] be lost where the infant affirms or otherwise ratifies the contract after reaching majority. Our Supreme Court has held that, under the particular circumstances, certain affirmations or conduct evidencing ratification were sufficient to bind the infant, regardless of whether a reasonable time for disaffirmance had passed. Application of this rule often leads to an equitable result, particularly where the infant can be fairly said to have recognized and adopted as binding a contract under which the infant accepts the benefits of the contract to the prejudice of the other party.
Id. at 583-84, 269 S.E.2d at 322 (citations omitted).
Here, the fee agreement was formed on November 4, 2008, and "Kaitlin Jennings turned eighteen (18) on March 9, 2009." The trial court found as fact that on November 13, 2009, Defendant had specifically advised Miss Jennings that Plaintiff was representing her. Additionally, the trial court found that Miss Jennings explicitly authorized Plaintiff to perform legal work on her behalf on January 8, 2010, shortly after Miss Jennings' eighteenth birthday. Miss Jennings directly benefitted from Plaintiff's and Defendants' legal advocacy in June 2013, when Miss Jennings accepted the proceeds of the UIM award when she was twenty-two-years old. Together, these findings demonstrate that Miss Jennings ratified the fee agreement after she had reached the age of majority both by failing to disavow the agreement within a reasonable time after she reached the age of majority and by continuing to work alongside Plaintiff and accepting the benefits of Plaintiff's contributions to her successful UIM claim.
Moreover, competent evidence in the record supports the trial court's finding that "Kaitlin Jennings was aware that [Plaintiff] was representing her and received the benefit of his representation." The record includes a letter, dated November 13, 2009, from Defendant to Miss Jennings, in which Defendant states: "As you are aware, we are representing you in your claim against Nationwide Insurance Company for underinsured motorist benefits arising out of the accident that happened in 2006 in North Carolina. In addition, attorney Daniel Glover is representing you in the law suit against the responsible driver in North Carolina." This record evidence supports the trial court's finding that Miss Jennings knew that Plaintiff was representing her. In finding that Miss Jennings had been aware of Plaintiff's representation and that Miss Jennings had received the benefit of his representation, the trial court's conclusion that an enforceable fee division agreement existed between the parties was supported by competent evidence and is binding on appeal.
Defendants further challenge the enforceability of the fee agreement by arguing that such an agreement violates Rules 1.5(e) and 1.14 of the North Carolina Rules of Professional Conduct that govern the practice of law. Therefore, Defendants argue, the agreement should be considered void as against public policy.
Rule 1.5(e) of the North Carolina Rules of Professional Conduct states:
A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
(3) the total fee is reasonable.
N.C. R. Prof. Conduct, Rule 1.5(e).
Governing an attorney's relationship with a minor client, Rule 1.14 states:
(a) When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem or guardian.
(c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.
N.C. R. Prof. Conduct, Rule 1.14.
Here, Defendants first argue that the fee agreement violates Rule 1.5(e) because "Plaintiff did not claim or assert that it assumed joint responsibility for the Pennsylvania UIM claim" and there is no evidence that Mr. Jennings ever consented to Plaintiff's purported fee split. Defendants also contend that Plaintiff violated Rule 1.14 because there is "no evidence that [Plaintiff] ever had any communication or discussion with Kaitlin Jennings relating to an agreement to split fees at any time."
However, this Court has previously held that violations of the Rules of Professional Conduct (the "Rules") do not render a contract void as against public policy. In Robertson v. Steris Corp. , this Court rejected the argument that "the award of fees and costs to [the defendant] was contrary to public policy in that the award was in violation of Rule 1.5(c) ... which provides that a contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer." Robertson v. Steris Corp. , 234 N.C. App. 525, 533-34, 760 S.E.2d 313, 319 (2014) (purgandum ). The Robertson Court reasoned that
[t]he breach of a provision of the Rules is not in and of itself ... a basis for civil liability. ... [T]he plain language of the Rules makes clear that the violation of a Rule should not give rise itself to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy. ... The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by the opposing parties as procedural weapons. ... Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a Rule.
Id. at 534, 760 S.E.2d at 319 (purgandum ). Therefore, allegations that a North Carolina attorney has violated these rules should be brought to the North Carolina State Bar rather than serve as "a basis for civil liability." Id.
Therefore, even if the fee agreement was found to have violated the Rules, this finding would not support the conclusion that the fee agreement is void as against public policy. Thus, for this reason and the reasons discussed above, we affirm the trial court's order that found the existence and the enforceability of the fee agreement between the parties.
III. Court Costs
In its cross-appeal, Plaintiff first asserts that the trial court erred by not awarding costs that it argues were mandatory under N.C. Gen. Stat. § 7A-305(d). We disagree.
Whether a trial court has properly interpreted the statutory framework applicable to costs is a question of law reviewed de novo on appeal. The reasonableness and necessity of costs is reviewed for abuse of discretion. Accordingly, we review de novo any questions regarding the trial court's interpretation of the statutory framework applicable in each case. Where the applicable statutes afford the trial court discretion in awarding costs, we review the trial court's determinations for abuse of discretion.
Khomyak v. Meek , 214 N.C. App. 54, 57, 715 S.E.2d 218, 220 (2011) (citations and quotation marks omitted).
"When the language of a statute is clear and unambiguous, the court must give it its plain and definite meaning." Id. at 67, 715 S.E.2d at 226 (citation and quotation marks omitted). "Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory." Id. (citation and quotation marks omitted). "[T]he word 'may' clearly connotes discretion." Halo Elecs., Inc. v. Pulse Elecs., Inc. , 579 U.S. ----, ----, 136 S. Ct. 1923, 1931 (2016) (citation and quotation marks omitted). "An abuse of discretion occurs where a court's ruling is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." Carter-Hubbard Publ'g Co. v. WRMC Hosp. Operating Corp. , 178 N.C. App. 621, 629, 633 S.E.2d 682, 687 (2006) (citations and quotation marks omitted), aff'd per curiam , 361 N.C. 233, 641 S.E.2d 301 (2007). "A manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." Anderson v. Hollifield , 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (purgandum ).
"To the party for whom judgment is given, costs shall be allowed as provided in Chapter 7A and [Chapter 6]" of North Carolina's General Statutes. N.C. Gen. Stat. § 6-1 (2017). Chapter 6, Article 3, dictates a party's liability for court costs in civil actions and proceedings. Applicable here, Section 6-20 states:
In actions where allowance of costs is not otherwise provided by the General Statutes [under Sections 6-18 or 6-19], costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes.
N.C. Gen. Stat. § 6-20 (2017). Section 7A-305(d) provides an exhaustive list of expenses, that "when incurred, are assessable or recoverable, as the case may be." N.C. Gen. Stat. § 7A-305(d) (2017).
By stating that "costs may be allowed in the discretion of the court ," Section 6-20 grants trial courts with the discretionary authority to summarily deny a motion for court costs. N.C. Gen. Stat. § 6-20 (emphasis added). Moreover, in stating that "[c]osts awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d)," Section 6-20 also dictates that Section 7A-305(d) 's limitations only apply to costs that the trial court actually awards. Id. (emphasis added). Therefore, if the trial court chooses to deny a motion for court costs, then Section 7A-305(d) would not apply.
Here, Plaintiff contends that the trial court erred by denying its motion for court costs as such an award was purportedly mandatory pursuant to Section 7A-305(d). In support of this argument, Plaintiff relied exclusively on this Court's prior decision in Khomyak. However, Plaintiff's contention and reliance on Khomyak are misguided.
In Khomyak , this Court addressed whether "the trial court erred in not awarding the full amount of their costs related to deposition expenses and expert witness fees" under Section 7A-305(d)(10)-(11). Khomyak , 214 N.C. App. at 67, 715 S.E.2d at 226 (emphasis added). But, with respect to the issue of whether to award costs at all, Khomyak cited Section 6-20 and acknowledged that "[w]here the applicable statutes afford the trial court discretion in awarding costs, we review the trial court's determinations for abuse of discretion." Id. at 57, 715 S.E.2d at 220. The trial court in Khomyak determined the amount of the costs awarded after it made the preliminary ruling called for by Section 6-20 to award costs. Comparatively, here, the trial court denied Plaintiff's motion to award costs, a purely discretionary determination governed by Section 6-20. Khomyak's holding regarding the calculation of costs has also been distinguished by other decisions. See Davignon v. Davignon , 245 N.C. App. 358, 362-64, 782 S.E.2d 391, 395-96 (2016).
Because the plain language of Section 6-20 grants trial courts discretion to deny a motion for costs, we review these determinations for abuse of discretion.[2] In this appeal, Plaintiff failed to argue that the trial court had abused its discretion in denying its motion for costs, and "[i]t is not the role of the appellate courts ... to create an appeal for an appellant," Viar v. N.C. Dep't of Transp. , 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Therefore, we affirm the trial court's denial of costs to Plaintiff.
IV. Prejudgment Interest
Plaintiff also argues that the trial court erred by not awarding Plaintiff prejudgment interest in the amount of $7,756.40 pursuant to N.C. Gen. Stat. § 24-5(a). We agree with Plaintiff that the trial court should have awarded prejudgment interest under North Carolina law. However, Defendants argue, for the first time on appeal, that Pennsylvania law should govern whether prejudgment interest is awarded. Because this issue was not presented to the trial court, it was not preserved for appellate review. N.C.R. App. P. 10(a)(2). Thus, we will review this issue under North Carolina law.
"Where an appeal presents a question of statutory interpretation, full review is appropriate, and we review a trial court's conclusions of law de novo ." DOT v. Charlotte Area Manufactured Hous., Inc. , 160 N.C. App. 461, 464, 586 S.E.2d 780, 782 (2003) (purgandum ). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." Craig v. New Hanover Cnty. Bd. of Educ. , 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).
In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach. The fact finder in an action for breach of contract shall distinguish the principal from the interest in the award, and the judgment shall provide that the principal amount bears interest until the judgment is satisfied. If the parties have agreed in the contract that the contract rate shall apply after judgment, then interest on an award in a contract action shall be at the contract rate after judgment; otherwise it shall be at the legal rate.
N.C. Gen. Stat. § 24-5(a) (2017).
"The trend in this State is to allow interest in almost all types of cases involving breach of contract." Thompson-Arthur Paving Co. v. Lincoln Battleground Associates , 95 N.C. App. 270, 282, 382 S.E.2d 817, 824 (1989) (citation omitted). "It is well established that a breach of contract occurs when a party fails to perform a contractual duty which has become absolute." Salvaggio v. New Breed Transfer Corp. , 150 N.C. App. 688, 692, 564 S.E.2d 641, 644 (2002). "Interest is the compensation allowed by law, or fixed by the parties, for the use, or forbearance, or detention of money. ... [A] valid tender of payment for the full amount, plus interest to date, will be effective to stop the running of interest. ..." Thompson-Arthur Paving Co. , 95 N.C. App. at 282, 382 S.E.2d at 824 (citation and quotation marks omitted). In North Carolina, "the legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more." N.C. Gen. Stat. § 24-1 (2017).
Moreover, by stating that "the judgment shall provide that the principal amount bears interest until the judgment is satisfied," Section 24-5(a) dictates that prejudgment interest awards in contract matters are mandatory rather than within the trial court's discretion. N.C. Gen. Stat. § 24-5(a) (emphasis added); see Hamby v. Williams , 196 N.C. App. 733, 737-38, 676 S.E.2d 478, 480-81 (2009) (interpreting similar language in Section 24-5(b), which governs prejudgment awards in non-contract matters, "to be mandatory and not discretionary on the part of the trial court"). Thus, "[w]here the amount of damages for a breach of contract is ascertainable from the contract itself, the prevailing party is entitled as a matter of law to interest from the date of the breach." Thomas M. McInnis & Associates, Inc. v. Hall , 318 N.C. 421, 431, 349 S.E.2d 552, 558 (1986).
Here, the trial court found that the parties had "entered into a fee division agreement for the case of Kaitlin Jennings," in which Plaintiff would recover one-third and Defendants would recover two-thirds of the total contingency fee earned. The trial court also found that the agreed upon contingency fee was to be one-third of Miss Jennings' recovery; that Miss Jennings had been awarded a net recovery of $245,000.00, which had been distributed on June 27, 2013; that Defendants had received their contingency fee of $81,665.85; that Defendants had defaulted on the fee agreement "on June 27, 2013, by not paying [Plaintiff] its portion as agreed"; and thus, Plaintiff was entitled to recover $27,222.00 from Defendants.
Plaintiff, as the prevailing party, was "entitled as a matter of law to interest from the date of the breach." Thomas M. McInnis & Associates, Inc. , 318 N.C. at 431, 349 S.E.2d at 558. Also, because "the parties have not agreed upon an interest rate," the legal rate of eight percent would apply. Members Interior Constr. Inc. v. Leader Constr. Co. , 124 N.C. App. 121, 125, 476 S.E.2d 399, 402 ( 1996) (citation omitted). Accordingly, we reverse and remand for the trial court to enter judgment awarding Plaintiff prejudgment interest pursuant to N.C. Gen. Stat. § 24-5(a).
Conclusion
We affirm the trial court's conclusions: (1) that the court had personal jurisdiction over Defendants; (2) that an enforceable fee agreement existed between the parties; and (3) that the trial court properly denied costs to Plaintiff. However, we reverse and remand for the trial court to award prejudgment interest in the Final Judgment.
AFFIRM IN PART; REVERSE AND REMAND IN PART.
Report per Rule 30(e).
Judges HUNTER and INMAN concur.

Our shortening of the Latin phrase "Lex purgandum est. " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.

From our research, it does not appear that our Supreme Court has directly addressed this issue. However, in Justus v. Rosner , our Supreme Court recently assessed an award of costs, pursuant to Sections 6-20 and 7A-305(d), under an abuse of discretion standard. Justus v. Rosner , --- N.C. ----, ----, --- S.E.2d ----, ----, No. 255A17, 2018 N.C. LEXIS 1136, at *19-23, 2018 WL 6714733, at *6-8 (Dec. 21, 2018).